BAYLEY, (LINGAN v.) See Case No. 8,370.
BAYLEY, (WATSON v.) See Case No. 17,-276.

---

## Case No. 1,140.

### BAYLISS et al. v. LAFAYETTE, M. & B. RY. CO. et al.

[8 Biss. 193; [2] 10 Chi. Leg. News. 213.]

Circuit Court, D. Indiana. March Term, 1878.

CORPORATIONS—FRAUD OF DIRECTORS—RIGHT OF STOCKHOLDERS TO BE MADE PARTIES TO SUIT.

1. Where any fraud has been perpetrated by the directors of a company, by which the property or interest of the stockholders is affected, the stockholders have a right to come in as parties to a suit against the company and ask that their property shall be relieved from the effect of such fraud.

2. Whether they would have this right where it appears that there would be no surplus re-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

maining after liquidating all the just claims against the property, quaere?
[Cited in Lafayette Co. v. Neely, 21 Fed. 741.]

[In equity. Bill by Abram B. Bayliss and others against the Lafayette, Muncie & Bloomington Railway Company and others. For further proceedings in this litigation, see Bayliss v. Lafayette, M. & B. Ry. Co., Case No. 1,141.]

H. Crawford and McDonald & Butler, for complainants.

Templer & Gregory and Harrison, Hines & Miller, for defendants.

DRUMMOND, Circuit Judge. This is an application made by certain stockholders of the road to be let in as defendants in a bill filed to foreclose the mortgage on the eastern division of the road. The application is based upon alleged frauds perpetrated by certain directors of the road in connection with the contractors who built the eastern division. It seems that in consequence, as is alleged, of an understanding between Mr. Eells, the contractor, and certain parties, directors of the road, a proposition was made by him to construct the road, which was accepted by the company. He was to purchase and lay the iron and furnish the rolling stock, and construct depots, round houses, etc.

The company was to grade the road, build the bridges and culverts, and get the right of way, etc. It is claimed that in consequence of this arrangement the contract was made with Eells, and it is also apparent that the consideration to be given to Eells for the construction of the road—that is, all the part of it which he was to construct—was greatly in excess of the value of the work to be done by him. It is also alleged that the parties who were directors, and had made a contract for the construction of the road, were to participate in the profits—in other words, they, as directors, made a contract in which they had a pecuniary interest, and, as is alleged, in fraud of the company. There is, therefore, a sufficient allegation that the parties who made this contract were directors, that they had a pecuniary interest therein. that some of the contracts were secret. and that they were in fraud of the company and of the stockholders.

I think, therefore, on this ground, that there is ample reason given for the interference of the stockholders, and for the application which they make to become defendants, so that they may have the right to prove, if they can, the allegations they have set forth.

It is, besides, alleged that $1,600,000 of stock and $1,600,000 of the first mortgage bonds were given to Eells, and that there was an arrangement made by which the bonds were to be sold at a certain price. It is also alleged that, in consequence of the agreement and understanding between Eells and those who were directors and parties to

some of the contracts, when Eells proposed to the company that he should be released from his contract, they agreed to it, though he did not comply with his contract, and did release him from his contract, in fraud of the rights of the company. Taking all these various allegations together, I think the charge of fraud and conspiracy is sufficiently stated, or at least enough to show that, if true, a court of equity would not tolerate a contract such as is set forth in this case, made by the directors with themselves, in which they had a pecuniary interest. The court will make an order allowing these parties to come in and file an answer as defendants to the bill on the foreclosure of the mortgage upon their giving bond to secure the payment of the costs.

The only difficulty about the case consists in this: That whatever might be the result of the proposed litigation on the part of the stockholders who shall file an answer, and say that it is for the benefit of all the stockholders who will join them, that, in any event, whatever has been expended upon this road would have to be paid. This division of the road is about eighty-four miles long, and it may be questionable whether or not the amount that has been actually expended, and for which, of course, there would be a valid claim against the road on the part of the bondholders, if we consider the value of roads generally in this part of the state and the northwest, would not absorb it all, and whether, therefore, there would be anything left for these stockholders, and whether it is an application made to defend against a mortgage simply because in certain aspects of the case their pecuniary interests would be jeoparded.

This question was not argued before the court, and there is nothing said in the proposed answer as to the value of the stock after all the just claims are paid. The answer admits that some of the bonds are valid and should be paid, and it admits further that there has been about eight or nine hundred thousand dollars expended upon the road. Now, whether or not there would be anything in any event coming to the stockholders is a matter of very grave doubt; and, I think, before this litigation proceeds further, that issue had, perhaps, better be distinctly made, so that the court shall be informed whether or not there would be a pecuniary interest for any of the stockholders remaining after liquidating all the just claims against the property. If there is not, it would give rise to this question: Whether a court of equity would allow the stockholders to come in and be made defendants for the purpose of making an example of these directors and teaching a wholesome moral lesson as to transactions of this kind. I do not say absolutely that it may not be the duty of a chancellor to allow it; that is, set aside all fraudulent acts of this kind, even though the stockholders may not have any residuary interest in the property after the payment of claims against it, but it is doubtful whether or not a court of equity ought to permit the great labor, expense and litigation which must follow, and which will have no pecuniary results in favor of the parties who are applying to the court, even if they succeed in all they have undertaken to do, namely: to prove the fraud against the directors of this company and the contractor. Therefore, I have thought that I would submit this question to the parties in this case and let them inform the court distinctly whether or not they desire to proceed in that view of the case, and wish to be made defendants and defend against the mortgage, involving, of course, as it would, all the costs, counsel fees, and labor which may be connected with such litigation.

I think the authorities are very clear that where any fraud has been perpetrated by the directors, by which the property or interest of the stockholders is affected, the stockholders can come in as parties and ask that their property shall be relieved from the effect of such fraud; but in all cases which have been decided in the supreme court, and I think by other courts upon this subject, it is assumed that the stockholders will have an interest or property remaining after it is relieved from the effect of the fraud of the directors or the officers of the company.